UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICK PAUL B.,

                                Plaintiff,

v.                                                  5:23-cv-1261
                                                       (MAD/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

HILLER COMERFORD                      JUSTIN M. GOLDSTEIN, ESQ.
INJURY & DISABILITY LAW
6000 North Bailey Avenue - Suite 1a
Amherst, NY 14226
Attorney for Plaintiff

SOCIAL SECURITY ADMINISTRATION       VERNON NORWOOD, ESQ.
OFFICE OF THE GENERAL COUNSEL
6410 Security Boulevard
Baltimore, MD 21235
Attorney for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

      Rick Paul B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for benefits. Dkt. No. 1. This matter was referred to the undersigned for a report and recommendation by the Hon. Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18. Dkt. Nos. 9, 10, 11. For the reasons set forth below, the Court recommends Plaintiff's motion be granted, Defendant's motion be denied, and the Commissioner's decision denying benefits be reversed and remanded.

## II.   BACKGROUND

Plaintiff was born in 1973, has an eighth grade education, and no recent work experience. T. 261, 266.[1] On April 28, 2021, Plaintiff filed an application for supplemental security income benefits, alleging disability beginning July 15, 2020, due to "neuropath; arthritis; bone spurs; sleep apnea; diabetes." *Id*. at 265. His application was initially denied on September 20, 2021, and again upon reconsideration on October 20, 2021. *Id*. at 15. Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Kenneth Theurer on July 20, 2022. *Id*. at 33-59. A vocational expert also testified. *Id.*

On July 29, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. *Id*. at 13-25. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on August 21, 2023. *Id*. at 1-9. Plaintiff timely commenced this action on October 11, 2023. Dkt. No. 1.

## III.   LEGAL STANDARDS

### A.   Standard for Benefits

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable

---

[1] The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A). Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A). The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); 20 C.F.R. § 416.920(a)(4)(i)-(v)).[2] The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

---

[2] While the supplemental security income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

**B.     Standard of Review**

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal punctuation and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal punctuation and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess*, 537 F.3d at 130; *Pratts*, 94 F.3d at 39.

**IV.   THE ALJ'S DECISION**

In his July 29, 2022, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See generally*, T. 13-25. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 28, 2021, the application date. *Id*. at 15. Proceeding to step two, the ALJ determined Plaintiff had the following severe impairments: diabetes mellitus, peripheral neuropathy, obstructive sleep apnea, and obesity. *Id*.

5

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*. Next, the ALJ determined Plaintiff had the residual functional capacity ("RFC")[3] to perform sedentary work as defined in 20 C.F.R. § 416.967(a)[4] except:

> [Plaintiff] can occasionally lift and carry ten pounds, sit for approximately six hours, and stand and/or walk for approximately two hours in an eight-hour workday with normal breaks. The claimant can occasionally climb ramps or stairs. He can never climb ladders, ropes or scaffolds. He can perform occasional balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid work requiring the use of foot controls. The claimant should avoid work at unprotected heights or in conjunction with dangerous machinery. The claimant requires the use of a cane to ambulate, retains ability to carry a small object such as a file or ledger in his free hand. The claimant can perform bilateral handling and fingering but no more than frequently.

*Id*. at 16.

At step four, the ALJ found Plaintiff had no past relevant work. *Id*. at 23. At step five, the ALJ determined, based on his age, education, work experience, and RFC, there were jobs

---

[3] A claimant's RFC is the most he "can still do despite his limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

[4] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 416.967(a); SSR 96-9p. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time and would generally total no more than about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. SSR 96-9p.

6

existing in significant numbers in the national economy Plaintiff could perform. *Id*. at 24. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*. at 25.

## V.   DISCUSSION

Plaintiff argues the "[t]he ALJ erred when failing to identify substantial evidence supporting the residual functional capacity finding and erred when failing to evaluate the medical opinions and symptomology pursuant to the appropriate legal standards." Dkt. No. 9 at 1. Defendant responds substantial evidence supports the Commissioner's decision and it is free of legal error. Dkt. No. 10 at 8.

### A.   The Opinion Evidence

On September 1, 2021, Plaintiff was examined by consultative examiner Rita Figueroa, M.D. *See* T. 362-65. At the outset of the examination, Plaintiff complained of chronic lower back pain, bone spurs on his right foot, numbness in his feet and fingers, a history of sleep apnea, and a history of diabetes. *Id*. at 362. Plaintiff reported his back and foot pain was "constant" and ranged between 6/10 and 8/10. *Id*. Plaintiff stated that walking for more than 15 minutes at a time, sitting for more than 30 minutes continuously, and/or standing for more than 10 minutes at a time aggravated his back pain. *Id*. Plaintiff reported that he lives with his wife and that she does the cooking, cleaning, laundry, and shopping. *Id*. at 363. He cannot stand in the shower and his wife helps him with dressing. *Id*.

Dr. Figueroa observed that Plaintiff was 5'11" tall and weighed 301 lbs. *Id*. at 363. Plaintiff had a limping gait and limped with the left leg. *Id*. He used a cane in his right hand. *Id*. He had slight limp with the cane and a severe limping gait without the cane. *Id*. Dr. Figueroa indicated the cane was medically necessary. *Id*. Plaintiff was unable to walk on his heels and toes. *Id*. His squat was 25% holding the examination table. *Id*. His stance was

normal. *Id*. He needed no help changing for the exam, getting on and off the examination table, and could rise from a chair without difficulty. *Id*.

Plaintiff's cervical spine exhibited full ranges of motion and his lumbar spine exhibited limited ranges of motion. *Id*. at 364. He "had difficulty with lumbar spine ROM." *Id*. Straight leg raise testing was positive bilaterally. *Id*. He had reduced ranges of motion of his hips and ankles and full ranges of motion of his shoulders, elbows, forearms, wrists, and fingers, knees bilaterally. *Id*. Plaintiff's joints were stable and nontender. *Id*.

Plaintiff exhibited normal reflexes in his arms and limited reflexes in his legs, and decreased sensations throughout his arms and legs. *Id*. His hands were also dull to pinprick sensation. *Id*. Plaintiff had full strength in his upper and lower extremities. *Id*. Plaintiff's hand and finger dexterity were intact, and his hands demonstrated full grip strength. *Id*. at 365.

Dr. Figueroa diagnosed Plaintiff with chronic low back pain, diabetic neuropathy, right foot bone spur, right foot arthritis, sleep apnea, and morbid obesity. *Id*. at 365. His prognosis was fair. *Id*. Based on the evaluation, Dr. Figueroa opined Plaintiff "will have marked limitations for prolonged walking and standing. He should avoid being on ladders and unprotected heights and walking on uneven ground. He will have moderate limitations to prolonged sitting and heavy lifting and carrying." *Id*.

On September 13, 2021, State agency medical analyst A. Vinluan, M.D., rendered a disability determination at the initial level. *Id*. at 68-80. Dr. Vinluan assessed Plaintiff could occasionally lift and carry ten pounds and frequently lift and carry less than ten pounds. *Id*. at 74. Plaintiff could stand and/or walk for about two hours and sit for about six hours with normal breaks in an eight-hour workday. *Id*. at 74-75. Plaintiff could occasionally operate foot controls with both feet. *Id*. at 75. Dr. Vinluan opened Plaintiff could occasionally climb ramps and

stairs, balance, kneel, crouch, and crawl. *Id*. Plaintiff could frequently stoop but never climb ladders, ropes, or scaffolds. *Id*. Dr. Vinluan assessed no manipulative limitations. *Id*. at 76. Dr. Vinluan stated the claimant should avoid even moderate exposure to hazards (including machinery, heights, etc.). *Id*. On October 19, 2021, State agency medical analyst S. Putcha, M.D., reviewed the record on reconsideration and agreed with Dr. Vinluan's opinion. *Id*. at 82-95.

On May 19, 2022, treating provider Dana Ruth-Setek, FNP-BC, MSN, completed a medical source statement. *Id*. at 468-70. NP Ruth-Setek noted Plaintiff's diagnoses of peripheral neuropathy bilaterally in the hands and feet. *Id*. at 468. Plaintiff's prognosis was chronic and worsening. *Id*. NP Ruth-Setek opined Plaintiff was incapable of tolerating even low stress work, explaining he was unable to grasp objects and unable to stand or sit for any length of time due to pain. *Id*.

NP Ruth-Setek also opined that, as a result of Plaintiff's impairments, if he were placed in a competitive work situation, he could walk less than one city block without rest or severe pain, sit at one time for fifteen minutes, stand at one time for five to ten minutes, and sit for less than two hours and stand/walk for less than two hours total in an eight-hour work day with normal breaks. *Id*. She indicated Plaintiff needs a job that permits shifting positions at will from sitting, standing, or walking, would sometimes need to take unscheduled breaks more than four times during an eight-hour work day, and would have to rest two to three days before returning to work. *Id*. at 468-69. Plaintiff must use a cane while standing/walking. *Id*. at 469.

NP Ruth-Setek opined Plaintiff could lift and carry less than ten pounds rarely and never ten pounds. *Id*. Plaintiff could occasionally look down, turn his head right or left, and look up. *Id*. He could rarely hold his head in a static position. *Id*. Plaintiff could rarely twist or

9

stoop/bend. *Id*. He could never crouch/squat, climb ladders, or climb stairs. *Id*. Plaintiff could rarely use his hands to grasp, turn, or twist objects. *Id*. He could rarely use his arms to reach and could never use his fingers for fine manipulation. *Id*. at 470. NP Ruth-Setek opined Plaintiff would likely be absent more than four days per month as a result of his impairments or treatment. *Id*. NP Ruth-Setek concluded Plaintiff would frequently experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks. *Id*. She also stated Plaintiff has vision issues and history of retinal deterioration and that with peripheral neuropathy, he would be sensitive to heat/cold temperatures. *Id*.

### B.    Evaluation of Opinion Evidence

For claims filed on or after March 27, 2017, such as this one, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from" a claimant's own "medical sources." 20 C.F.R. § 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior finding. *Id*. § 416.920c(a)-(c).

The "most important factors" to be considered are supportability and consistency. *Id*. § 416.920c(a), (b)(2). The supportability factor assesses a medical opinion compared to "the objective medical evidence and supporting explanations presented by a medical source[.]" *Id*. § 416.920c(c)(1). The consistency factor compares a medical opinion to "the evidence from other medical sources and nonmedical sources in the claim[.]" *Id*. § 416.920c(c)(2). An ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the]

10

determination or decision." *Id*. § 416.920c(b)(2).  An ALJ is not required to articulate consideration of the remaining factors—relationship with the claimant, specialization, and "other factors"—unless the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record[.]" *Id*. § 416.920c(b)(3).

"A conclusory analysis of the [relevant] factors 'precludes the Court from undertaking meaningful review' of the ALJ's decision." *Annjeanette B. v. Kijakazi*, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (quoting *Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 9 (W.D.N.Y. 2022)).  "District courts in the Second Circuit have reiterated . . . that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record." *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *15 (N.D.N.Y. June 27, 2023) (citing *Stephanie F. v. Kijakazi*, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor.")).

An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error.  *Loucks v. Kijakazi*, No. 21-cv-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (summary order).  However, "if a searching review of the record assures [the court] that the substance of the [regulation] was not traversed," the court may affirm the Commissioner's decision.  *Id*. (internal quotation marks omitted) (quoting *Estrella*, 925 F.3d at 96 (2d Cir. 2019).

Here, the ALJ found the opinions of Dr. Vinluan and Dr. Putcha persuasive, the opinion of Dr. Figueroa only somewhat persuasive, and the opinion of NP Ruth-Setek not persuasive.  *Id*.

11

at 22-23.  Plaintiff primarily argues the ALJ's assessment of NP Ruth-Setek's opinion is deficient.  Dkt. Nos. 9 at 10-21, 11 at 5-8.  The Court agrees.

As set forth above, NP Ruth-Setek offered an opinion finding Plaintiff to have significant limitations in his ability to perform work.  The ALJ found this opinion unpersuasive because it is not "based upon the objective clinical findings of her own examinations[.]"  *Id*. at  23.  Although the ALJ generally cited to NP Ruth-Setek's treatment records, "the ALJ did not reference any specific medical evidence[.]"  *Felix N. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00933 (LEK/CFH), 2024 WL 4250321, at *6 (N.D.N.Y. Aug. 21, 2024) (quoting *Coleman v. Kijakazi*, No. 3:20-CV-01588, 2022 WL 766127, at *8 (D. Conn. Mar. 14, 2022) (concluding the ALJ erred in his supportability analysis where the ALJ found that "the degree of limitation described by Dr. Barone [is] not seen in more recent treatment records," but did not cite to specific medical records)), *report and recommendation adopted sub nom. Felix N. v. O'Malley*, 2024 WL 4100012 (N.D.N.Y. Sept. 6, 2024).

Notably, the ALJ's decision contains no explanation as to *how* NP Ruth-Setek's "objective clinical findings of her own examinations" do not support her May 19, 2022, opinion. *See Brian C. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01292 (LEK/TWD), 2024 WL 1468869, at *7-8 (N.D.N.Y. Feb. 20, 2024) (remanding where the ALJ "summarily state[d that] PA Gdovin's opinions [were] not well supported," but the ALJ's "decision contains no explanation as to how [PA Gdovin's] records undermine[d his medical] opinions"), *report and recommendation adopted*, 2024 WL 1069877 (N.D.N.Y. Mar. 12, 2024); *see also Bridget P. v. Comm'r of Soc. Sec.*, No. 3:21-CV-654 (CFH), 2023 WL 2402782, at *16 (N.D.N.Y. Mar. 8, 2023) (finding error where the ALJ failed to "elaborate in any way" on how the doctors' treatment records do or do not support their medical opinions).

Although the Commissioner attempts to "supply the necessary explanation" as to why the ALJ found NP Ruth-Setek's opinion to not be "well explained nor well supported by her generally unremarkable examination findings," Dkt. No. 10 at 13-14, "it is well-settled that this Court may not accept 'post hoc rationalization for agency action.'" *Felix*, 2024 WL 4250321, at *6 (quoting *Badaszewski v. Comm'r of Soc. Sec.*, No. 18-CV-796, 2020 WL 486376, at *4 (W.D.N.Y. Jan. 30, 2020)) (other citation omitted); *see McAllister v. Colvin*, 205 F. Supp. 3d 314, 333 (E.D.N.Y. 2016) ("Such post hoc rationalizations are insufficient, as a matter of law, to bolster the ALJ's decision."); *Dana Marie M. v. Comm'r of Soc. Sec.*, No. 6:21-CV-458 (GLS/CFH), 2022 WL 2314560, at *7 (N.D.N.Y. June 28, 2022) ("The Court cannot accept the Commissioner's post hoc rationalizations for the ALJ's 'unpersuasive' finding related to Dr. Taylor's opinions.") (citations omitted), *report and recommendation adopted*, 2022 WL 22210128 (N.D.N.Y. Sept. 28, 2022); *Tammie S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1021 (ML), 2022 WL 356754, at *7 (N.D.N.Y. Feb. 7, 2022) ("Post hoc explanations do not constitute substantial evidence.").

In addition to objective medical evidence, the regulations indicate that an ALJ should also consider the "supporting explanations" provided by the medical source. *See* 20 C.F.R. § 416.920c(c)(1). "Courts in the Second Circuit have found that an ALJ's failure to indicate how those supporting explanations were considered is error." *Scott A. W. v. Comm'r of Soc. Sec.*, No. 5:23-cv-131 (BKS), 2024 WL 2023238, at *9 (N.D.N.Y. May 6, 2024) (citation omitted). As previously stated, in her opinion, NP Ruth-Setek noted Plaintiff's diagnoses of peripheral neuropathy in the hands and feet, that his prognosis was chronic and worsening, and Plaintiff was unable to grasp objects, and unable to stand or sit for any length of time "due to pain." T. 468. But as Plaintiff points out, the ALJ did not acknowledge or evaluate this support provided

by NP Ruth-Setek in her opinion. Dkt. Nos. 9 at 12, 11 at 1. The Court finds the ALJ's lack of discussion regarding Plaintiff's diagnosis and symptoms especially problematic because earlier in his decision, the ALJ noted that during Plaintiff's April 11, 2022, annual physical exam, he "was not assessed with having neuropathy of his hands." T. 20.

Turning to the consistency factor, the ALJ stated NP Ruth-Setek's opinion "is not consistent with the objective clinical findings reported in the treatment records from physical examinations and imaging studies included in the completed record of evidence, including examinations by Dr. Saponara, DPM, pain management specialist Qi Yang, DO, Dr. Figueroa, Lauren Eadline, MSN, FNP-C, and medical providers at Crouse Hospital (Exhibits B1F-B3F, B8F, and B9F)." *Id*. at 23. In doing so, the ALJ generally cited to all of Plaintiff's medical records. *Id*. Again, "identifying a lack of consistency, but failing to explain the inconsistency in the context of the medical record as a whole prevents meaningful review." *James W. v. Kijakazi*, No. 8:20-CV-954 (DJS), 2022 WL 685288, at *4 (N.D.N.Y. Mar. 8, 2022); *see also Robert K. v. Kijakazi*, No. 6:21-CV-1095 (DJS), 2023 WL 2242126, at 4 (N.D.N.Y. Feb. 27, 2023).[5]

To analyze consistency, the ALJ must conduct "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021); *see also Jennifer G. v. Comm'r of Soc. Sec.*, No. 5:22-CV-00996 (MAD/ML) 2023 WL 8435991, at *9 (N.D.N.Y. Sept.

---

[5] The Court notes the ALJ engaged in a similarly cursory evaluation of the consistency factor when evaluating of Dr. Figueroa's opinion by generally citing to the entirety of the medical record. *See* T. at 21-22 ("her opinion is only somewhat persuasive because the objective medical evidence does not support limitations to prolonged sitting. The objective clinical evidence documented during physical exams performed by primary care providers, hospital medical providers, the podiatrist, and the pain management specialist during an office visit in May 2021 do not indicate the claimant has severe functional limitation for sitting (Exhibits B1F, B2F, B6F, B8F, and B9F).").

6, 2023) (remanding where the ALJ failed to "meaningfully discuss" the consistency of medical opinions). With the exception of the ALJ's explanation that NP Ruth-Setek's opinion regarding Plaintiff's inability to perform any fine manipulation with his fingers was inconsistent with Dr. Figueroa's clinical findings, the ALJ did not articulate *how* NP Ruth-Setek's assessed limitations were inconsistent with the "clinical findings" and "imaging studies" of record. *See* T. 23.

For example, Dr. Saponara, a podiatrist, examined Plaintiff's feet for complaints of numbness and tingling on March 5, 2021. Id. at 306, 308. Plaintiff reported numbness and tingling in his toes and dorsal and plantar aspects of the feet. *Id*. He had clear evidence of numbness, tingling, burning, and absence of sensation consistent with diabetic neuropathic symptoms. *Id*. Signs of diabetic neuropathy were clearly identified with a dense peripheral neuropathy with absence of vibratory sensation in the toes. *Id*. Similar findings were made on May 11, 2021. *Id*. at 308. Without further guidance from the ALJ, it is unclear to the Court how Dr. Saponara's "clinical findings" are inconsistent with NP Ruth-Setek's opinion, thus leaving the Court without the ability to trace the path of the ALJ's reasoning.

On May 27, 2021, Plaintiff treated with Dr. Yang at Upstate Comprehensive Pain Medicine and Bone and Joint Center following a referral "by internal medicine for bilateral LE neuropathy, with EMG studies demonstrating neuropathy." *Id*. at 626. During the examination, Plaintiff described throbbing and constant lower leg and back pain. *Id*. Plaintiff reported issues with balance and that he had been using a cane to help with walking and balance. *Id*.

Dr. Yang noted x-rays of Plaintiff's lumbar spine, taken on February 15, 2021, revealed mild lumbar spondylosis with small osteophytes. *Id*. at 629. On examination, there was musculoskeletal tenderness. *Id*. There was bilateral palpation tenderness to paraspinal musculature in the lumbar region. *Id*. at 630. Light palpation induced jerking reaction. *Id*.

15

There was "sharp" pain on palpation of the toes region. *Id*. Plaintiff's gait was slow and unsteady walking with a cane. *Id*. He could not stand on toes or heel due to shakiness. *Id*. There was weakness in the left foot compared to the right. *Id*. at 631. Deep tendon reflexes were diminished bilaterally in the patella and Achilles. *Id*. Dr. Yang started Plaintiff on Lyrica and referred Plaintiff for a magnetic resonance imaging of the lumbar spine. *Id*.

As Plaintiff points out, the ALJ did not discuss *any* of the objective findings within Dr. Yang's treatment note. Dkt. No. 9 at 14. Instead, the ALJ noted, "Dr. Yang stated in his May 2021 treatment note that [Plaintiff] had EMG studies demonstrating neuropathy. There is no copy of any EMG report in Dr. Yang's treatment records. There is no documentation that the claimant had EMG studies of his upper extremities." T. 23. Moreover, it is unclear which "imaging studies" are inconsistent with NP Ruth-Setek's opinions. *See* Dkt. No. 9 at 15. Again, without more, the ALJ's lack of explanation frustrates meaningful review.

Furthermore, the consistency analysis is not limited to objective evidence, but requires an ALJ to compare a medical opinion to "the evidence from other medical sources and nonmedical sources in the claim[.]" 20 C.F.R. § 416.920c(c)(2). Plaintiff is a nonmedical source. *See id*. § 416.902(j)(1). As set forth above, NP Ruth-Setek opined Plaintiff's pain limited his ability to grasp objects, stand, sit, and concentrate. T. 468, 470. The ALJ does not articulate how NP Ruth-Setek's opinion is inconsistent with the record, especially given Plaintiff's persistent complaints of pain regarding his ability to stand or sit. *Id*. at 39-40, 472, 497, 499, 506, 511, 537, 543, 545, 550, 552, 554, 563, 567, 591, 592, 621, 624.

The Commissioner once again attempts to "supply the necessary explanation" as to why the ALJ reasonably found NP Ruth-Setek's opinion inconsistent with other substantial evidence of record. Dkt No. 10 at 14. But as noted above, "the Court may not accept 'post hoc

16

rationalization for agency action.'" *Felix*, 2024 WL 4250321, at *6; *see also Gina B. v. Comm'r of Soc. Sec.*, No. 3:23-cv-00769, 2024 WL 4262640, at *7 (D. Conn. Sept. 23, 2024) ("The Commissioner cites to many pages in the medical record, pointing to them as the support for the ALJ's determination.  However, that was the ALJ's task, and counsel for the Commissioner should not be tasked with filling in gaps later in the process." (internal citation omitted)).

In short, without adequate discussion of the supportability and consistency factor as to NP Ruth-Setek's opinion, "the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review."  *Nicole L. v. Kijakazi*, No. 6:20-CV-01576 (NAM), 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022); *see Melissa S. v. Comm'r Soc. Sec.*, No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) (finding remand appropriate where "the ALJ does nothing more than state that the opinion is inconsistent with the record but offers no explanation as to how that is true[ ]" and that "[b]road, conclusory statements that an opinion is not consistent with the medical record are inadequate under the Commissioner's regulations").

The ALJ's inadequate consideration of NP Ruth-Setek's opinion also calls into question his evaluation of the persuasiveness of the opinions of non-examining consultants Drs. Vinluan and Putcha, which were rendered without access to significant evidence in the record, such as NP Ruth-Setek's medical source statement, NP Ruth-Setek's treatment records, and Dr. Yang's treatment records.  *See* T. 68-80, 82-90; *see Danette Z. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1273 (ATB), 2020 WL 6700310, at *8 (N.D.N.Y. Nov. 13, 2020) (remanding, in part, due to non-examining consultant's inability to review later treating source opinion under the prior regulations); *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vt. July 14, 2020) (remanding where ALJ relied upon opinion of non-examining consultant who had no opportunity to review treating source opinions that described greater restrictions).

17

Further, although the ALJ states that the opinions of Dr. Vinluan and Dr. Putcha "remained consistent with the complete record of medical evidence at the hearing level, including the most recent thorough physical examination that was reported on April 11, 2022," *id*., the ALJ does not explain *how* their opinions remained "consistent with the complete record of medical evidence" including NP Ruth-Setek's opinion, which if credited, would potentially lead to a finding of disability at step five. Accordingly, the foregoing errors cannot be deemed harmless. Remand is necessary for further review consistent with the Court's recommendation herein.

Because the Court recommends granting Plaintiff's motion, the Court does not address Plaintiff's remaining arguments. *See, e.g.*, *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" after the court had already determined remand was warranted); *Samantha D. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1280 (ATB), 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020) (declining to reach arguments concerning whether ALJ's findings were supported by substantial evidence where the court had already determined that remand was necessary).

## VI. CONCLUSION

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED**, Defendant's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED**, and the Commissioner's decision be reversed and remanded.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 10, 2025
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge